UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
FILBERTO ALLER,                                    **NOT FOR PRINT OR**
                                                   **ELECTRONIC PUBLICATION**
                        Petitioner,

                                                   **MEMORANDUM & ORDER**
            -against-                              09-CV-1192

WILLIAM LAPE, Warden Coxsackie
Correctional Facility,

                        Respondent.
------------------------------------X
**KIYO A. MATSUMOTO, UNITED STATES DISTRICT JUDGE:**

          Petitioner Filberto Aller ("petitioner") is

incarcerated pursuant to a judgment of conviction imposed in

Supreme Court, Queens County.  Alleging that his state custody

violates his federal and constitutional rights due to the

ineffective assistance of his appellate counsel on his direct

appeal, petitioner seeks relief by means of a petition for a

writ of habeas corpus brought pursuant to 28 U.S.C. Section

2254. (ECF No. 1, Petition ("Pet."); ECF No. 2, Memorandum of

Law in Support of Writ of Habeas Corpus dated Mar. 19, 2009

("Pet'r Mem.") at 1, 3.)  For the reasons set forth below, the

petition is denied.

                      <u>BACKGROUND</u>

**I.  Petitioner's 2004 Trial**

          Petitioner's criminal convictions arise from a jury

trial in New York State Supreme Court, Queens County on the

charges of rape, sodomy, sexual abuse, robbery, and unlawful

imprisonment.  Jury selection for petitioner's criminal trial

took place over two days and proceeded through four rounds.

(Trial Transcript ("Tr.") at 24, 79, 112, 142.)

Petitioner was present during the first round of jury

selection on January 26, 2004.  (*Id.* at 23-68, 32.)  After *voir*

*dire* concluded in that round, the trial court instructed

petitioner's counsel and the assistant district attorneys to

step into chambers when they were "ready" to do so.  (*Id.* at

68.)  Once inside chambers, in the presence of the court, the

clerk of the court, the court reporter, and one another, both

sides made their respective for-cause and peremptory challenges.

(*Id.* at 69-75.)  Petitioner was not present in chambers during

the exercise of these challenges.  (*See id.* 68-75; Pet'r Mem. at

3.)  However, following the *in camera* challenges, in open court

and in the presence of petitioner, the clerk of the court asked

the challenged jurors to stand and exit the court.  (Tr. at 75.)

Again in open court and in the presence of petitioner, the clerk

then asked if the sole remaining juror was acceptable to both

sides, and after both parties responded affirmatively, the

single juror was sworn in.  (*Id.*)  Jury selection then concluded

for the day.  (*Id.*)

On January 30, 2004, the second, third, and fourth

rounds of jury selection were conducted.  (*Id.* at 79, 112, 142.)

Petitioner was present when all prospective jurors were

questioned during these rounds. (*See id.* at 77-187.) Once each round of *voir dire* concluded, the court stated "Counsel, consult" and instructed counsel to step into chambers when they were "ready." (*Id.* at 110, 138, 177-78.) Inside chambers, and outside petitioner's presence but in the presence of the court, the clerk of the court, the court reporter, and one another, the attorneys each made for-cause and peremptory challenges. (*Id.* at 110-12, 138-41, 178-83.) Following each round of *in camera* challenges, the clerk excused the challenged jurors in petitioner's presence and in open court. (*Id.* at 112, 141-42, 183-84.) In each round, after excusing the challenged jurors in petitioner's presence, the clerk asked whether the remaining seated jurors were acceptable to both sides and, after affirmative responses were given, swore in the jurors. (*Id.* at 112, 142, 184.)

Petitioner's case was tried before the jury in February 2004. (*Id.* at 300.) On February 11, 2004, petitioner was convicted of Rape in the First Degree (N.Y. Penal Law § 130.35(1)), two counts of Sodomy in the First Degree (N.Y. Penal Law § 130.50(1)), four counts of Sexual Abuse in the First Degree (N.Y. Penal Law § 130.65(1)), Robbery in the Third Degree (N.Y. Penal Law § 160.05), and Unlawful Imprisonment in the Third Degree (N.Y. Penal Law § 135.10). (*Id.* at 896-900.) On March 24, 2004, petitioner was sentenced to determinate prison

3

terms of fifteen years for the first-degree rape and sodomy

convictions, and five years for the first-degree sexual abuse

convictions, as well as indeterminate prison terms of one to

three years for third-degree robbery and first-degree unlawful

imprisonment, all to run concurrently.  (ECF No. 8, Respondent's

Memorandum of Law in Opposition to Petition for a Writ of Habeas

Corpus dated Oct. 9, 2009 ("Resp't Mem.") at 1-2.)  Petitioner

is currently incarcerated pursuant to this sentence.  (Resp't

Mem. at 2.)

## II.  Post Conviction Proceedings in State Court

Petitioner appealed his conviction to the Appellate

Division, Second Department, which affirmed the conviction on

October 3, 2006 in *People v. Aller*, 821 N.Y.S.2d 657 (2d Dep't

2006).  (Resp't Mem. at 2, 13.) Petitioner was represented by

Barbara Lerner ("appellate counsel") on his direct appeal.

(Resp't Ex. A, Brief for Defendant-Appellant ("Br. Def.-

Appellant") at 26, *People v. Aller*, 821 N.Y.S.2d 657 (2d Dep't

2006).)[1]   On March 29, 2007, the New York Court of Appeals

---

[1]     There appears to be some confusion in the record as to the identity of
petitioner's appellate counsel.  Petitioner lists "Legal Aid" as his
appellate counsel,(Pet. at 12; Pet'r Mem. at 2), while respondent asserts
that petitioner's appellate counsel was De Nice Powell, Esq. (Resp't Mem. at
12 (citing Br. Def.-Appellant).)  Although respondent cites to the brief
submitted on behalf of petitioner to the New York Supreme Court on direct
appeal, De Nice Powell's name does not appear on that brief. (*See* Br. Def.-
Appellant.)  Rather, the record reflects that and Barbara Lerner, Esq.
("Lerner") of the Legal Aid Society submitted the appellate brief on the
direct appeal on behalf of petitioner. (*Id.* at 26.)  The court therefore
finds that Lerner, the appellate counsel contemporaneously named on the
relevant appellate brief, in fact counseled petitioner on appeal.

denied petitioner leave to appeal the decision of the Appellate Division. (Pet'r Mem. at 2; Resp't Mem. at 2, 14); *People v. Aller*, 834 N.Y.S.2d 509 (2007).

On June 27, 2007, petitioner filed an application for a writ of error *coram nobis* in the Appellate Division, Second Department, challenging the effectiveness of his appellate counsel on his direct appeal. (Resp't Ex. I, Notice of Motion for a Writ of Error *Coram Nobis* dated June 27, 2007.) On February 13, 2008, the Appellate Division denied petitioner's application. (Pet'r Mem. at 4; Resp't Mem. at 14); *People v. Aller*, 849 N.Y.S.2d 903 (2d Dep't 2008). Following this denial, petitioner sought discretionary leave to appeal the denial pursuant to New York Criminal Procedure Law Section 450.90(1). (Pet'r Ex. E, Letter from Robert DiDio, Esq. to the Hon. Judith Kaye dated Mar. 3, 2008.) On June 23, 2008, the Court of Appeals denied petitioner leave to appeal. (Pet'r Mem. at 4; Resp't Mem. at 14); *People v. Aller*, 862 N.Y.S.2d 338 (2008).

## III. The Instant Habeas Petition

Less than one year after the Court of Appeals decision, petitioner filed the instant habeas petition on March 19, 2009, raising a single claim of ineffective assistance of appellate counsel. (Pet. at 7; Pet'r Mem. at 4; Resp't Mem. at 14.) Specifically, petitioner alleges that appellate counsel

was ineffective for failing to raise on direct appeal the issue

of whether petitioner's constitutional and federal rights were

violated when trial counsel failed to object to the exercise of

juror challenges outside of petitioner's presence.  (Pet'r Mem.

at 3, 6.)  Respondent has moved for judgment on the pleadings

and petitioner has opposed.  (Resp't Mem. at 23; Pet'r Mem. at

8.)

## STANDARD OF REVIEW

A Section 2254 habeas petition shall not be granted

unless the petitioner "has exhausted the remedies available in

the courts of the State."  28 U.S.C. § 2254(b)(1)(A); *see also*

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate

prisoners must give the state courts one full opportunity to

resolve any constitutional issues by invoking one complete round

of the State's established appellate review process."); *Rosa v.*

*McCray*, 396 F.3d 210, 217 (2d Cir. 2005), *cert. denied*, 546 U.S.

889 (2005).  A habeas petitioner's state remedies are considered

exhausted when the petitioner has: "(i) presented the federal

constitutional claim asserted in the petition to the highest

state court (after preserving it as required by state law in

lower courts) and (ii) informed that court (and lower courts)

about both the factual and legal bases for the federal claim."

*Ramirez v. Attorney Gen. of N.Y.*, 280 F.3d 87, 94 (2d Cir.

2001); *see also Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995) ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims to the highest court of the pertinent state.") (internal quotation marks and citation omitted).

Where a claim has been exhausted, the state court's adjudication on the merits is entitled to deference on collateral review, *Channer v. Brooks*, 320 F.3d 188, 195 (2d Cir. 2003), and thus, a federal court may only grant habeas relief where the state court's adjudication of the federal claim resulted in a decision that was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (O'Connor, J., delivering the opinion of the Court as to Part II). A state

court decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The Supreme Court has emphasized that the reasonableness of the application of federal law is to be assessed objectively rather than subjectively. *Id.* at 409-10. This question of whether a state court bases a decision on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), is not a question of whether the federal court reviewing the record on a habeas petition agrees with the state court's findings, but only whether those findings are reasonable. *Channer*, 320 F.3d at 195. Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.

## DISCUSSION

Here, there is no dispute as to the timeliness of petitioner's claim under the applicable one-year statute of limitations for federal habeas petitions. (*See* Pet'r Mem. at 4; Resp't Mem. at 14-15.) Further, there is no dispute that

petitioner has exhausted his claim in state court.  (*See* Pet'r

Mem. at 4; Resp't Mem. at 15-16.)  Accordingly, this court need

only determine whether the state court reasonably applied

clearly established federal law when rejecting petitioner's

ineffective assistance of appellate counsel claim on the merits.

## I.  Standard for Ineffective Assistance of Counsel Claims

The standard governing ineffective assistance of

counsel claims is well-established and was set forth by the

Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).

*See Williams*, 529 U.S. at 390-91.  Under *Strickland*, the

appropriate inquiry for ineffective assistance claims is whether

petitioner had "reasonably effective assistance" of counsel,

such that counsel's actions neither: (1) fell below an objective

standard of reasonableness (the "performance prong"); nor (2)

caused a reasonable probability that the result of the trial

would have been different but for counsel's unprofessional

errors (the "prejudice prong").  *Strickland*, 466 U.S. at 687-96.

The same *Strickland* standard applies when determining

whether appellate counsel on direct appeal has provided

constitutionally effective assistance.  *See Aparicio v. Artuz*,

269 F.3d 78, 95 (2d Cir. 2001) ("Although it was born in the

context of ineffective assistance of trial counsel, *Strickland*'s

two-prong test applies equally to claims of ineffective

assistance of appellate counsel on a defendant's first appeal as

of right.") (citing *Evitts v. Lucey*, 469 U.S. 387, 396-97

(1985)); *see also Gaskin v. Graham*, No. 08-CV-1124, 2009 WL

5214498, at *17 (E.D.N.Y Dec. 30, 2009) ("In determining whether

appellate counsel has rendered constitutionally effective

assistance, courts will apply the standard established in

*Strickland v. Washington* for analyzing such claims as to trial

counsel.") (internal citation omitted).

        First, in applying the performance prong of this

standard a court must "indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable

professional assistance." *Strickland*, 466 U.S. at 689. Thus,

"the defendant must overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound

[appellate] strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350

U.S. 91, 101 (1955)); *see also United States v. Helgesen*, 669

F.2d 69, 72 (2d Cir. 1982), *cert. denied*, 456 U.S. 929 (1982)

("[Appellate] advocacy is an art, and the advocate must be given

some latitude in deciding upon an appropriate [appellate]

strategy."). Further, counsel's action must be viewed as of the

time of the appeal. *Strickland*, 466 U.S. at 690.

        Second, under the prejudice prong, "[t]he benchmark .

. . must be whether counsel's conduct so undermined the proper

functioning of the adversarial process that the [appeal] cannot

be relied on as having produced a just result." *Id.* at 686.

"[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the [decisionmaker] would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). Thus, even objectively unreasonable errors on the part of counsel will not result in the setting aside of a judgment in a criminal proceeding if the errors can be shown to have had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Notably, in the context of petitioner's ineffective assistance of appellate counsel claims, an attorney need not bring every potential non-frivolous claim to meet the performance prong. Rather, appellate counsel may appropriately "select from among" potential non-frivolous claims "to maximize the likelihood of success of appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983)). Indeed, "[t]his process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52).

Additionally, under the prejudice prong "in the appellate context, a petitioner must demonstrate that 'there was a 'reasonable probability' that [his] claim would have been

11

successful before the [state's highest court].'" *Mayo v.*
*Henderson*, 13 F.3d 528, 534 (2d Cir. 1994) (quoting *Claudio v.*
*Scully*, 982 F.2d 798, 803 (2d Cir. 1992)).  That is, to prove
prejudice in the appellate context, petitioner has to show that
there is a reasonable probability that he would have been
successful in his appeal.  *See Gaskin*, 2009 WL 5214498, at *17
(citing *Mayo*, 13 F.3d at 533-34; *Aparicio*, 269 F.3d at 95).

## II.  Application

Here, petitioner claimed in his *coram nobis* petition
that his appellate counsel was ineffective for failing to raise
on direct appeal the issue of whether petitioner's
constitutional and federal rights were violated when the
exercise of jury challenges were conducted outside petitioner's
presence.  (Resp't Ex. I, Affirmation in Support of Writ of
Error *Coram Nobis* ("DiDio Aff.") dated June 27, 2007, at 2-3.)
The New York Appellate Division rejected petitioner's claim on
the merits, finding that petitioner "failed to establish that he
was denied the effective assistance of appellate counsel."
*Aller*, 849 N.Y.S.2d at 903.  The court must now decide whether
the Appellate Division unreasonably applied the *Strickland*
standard by ruling that the failure to raise this issue on
direct appeal did not rise to the level of ineffective
assistance of appellate counsel.  For the reasons that follow,
the court finds that the state court's application of the

*Strickland* standard was reasonable.

### A. *Strickland*'s Performance Prong

First, under the performance prong, petitioner cannot show that the state court unreasonably determined that appellate counsel's performance did not fall below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 689. Petitioner faults appellate counsel for failing to raise the issue of whether petitioner's constitutional and federal rights were violated when trial counsel failed to object to the exercise of juror challenges outside of petitioner's presence. (DiDio Aff. at 2-3.) As an initial matter, however, because petitioner's underlying claim plainly lacks merit, as a matter of law this claim cannot give rise to a claim of ineffective assistance of trial or appellate counsel. Specifically, trial counsel's failure to raise a meritless objection, and in turn, appellate counsel's failure to claim ineffective assistance of trial counsel based upon that lack of objection, cannot, as a matter of law, constitute ineffective assistance of counsel.

Petitioner's underlying claim that the exercise of juror challenges outside of his presence violated his federal and constitutional rights fails as a matter of law. "It is a well-settled principle of constitutional law that a criminal defendant has the right 'to be present at all stages of the trial where his absence might frustrate the fairness of the

13

proceedings,'" and jury selection is certainly among these

stages.  *Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002)

(quoting *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975)).

     The right of a defendant to be present is not

absolute, however, and instead "is triggered only when the

defendant's 'presence has a relation, reasonably substantial, to

the fullness of his opportunity to defend against the charge.'"

*Cohen*, 290 F.3d at 489 (quoting *Snyder v. Massachusetts*, 291

U.S. 97, 105-06 (1934)).  The Second Circuit has thus instructed

that "if a defendant is given an opportunity to register his

opinions with counsel after juror questioning and is present

when the exercise of strikes is given formal effect, then his

constitutional right to be present is satisfied."  *Cohen*, 290

F.3d at 490 (finding defendant's constitutional rights with

regard to challenging jurors "were sufficiently preserved by his

presence during the questioning of jurors, his opportunities to

confer with counsel, and the formal announcement of the stricken

and seated jurors in open court" and holding that defendant "did

not have a constitutional right to be present during the juror

challenges conducted in . . . chambers.").  Given this clear

precedent, courts in this Circuit have routinely held that a

defendant's due process rights are not violated if the exercise

of juror challenges occurs outside the defendant's presence.

*See, e.g.*, *Rolle v. West*, No. 05-CV-591, 2008 WL 3887662, at *13

14

(E.D.N.Y. Aug. 21, 2008) (rejecting petitioner's claim that

trial counsel was ineffective where counsel failed to argue that

petitioner "was denied his right to be present because he was

absent from in-chambers conferences where parties exercised for-

cause and peremptory challenges to jurors") (citing *Cohen*, 290

F.3d at 491); *Evans v. Artuz*, 68 F. Supp. 2d 188, 195 (E.D.N.Y.

1999) (finding that defendant's "absence from the formal

exercise of jury challenges in the robing room did not deny him

due process of law" because defendant "was able to view every

potential juror as he or she answered voir dire questions in

open court," had the opportunity "to consult with his attorney

about challenges before the attorney retired with the court to

the robing room," and "was present when the court clerk excused

certain jurors and seated others").

Petitioner argues that he was deprived of his

constitutional right to be present because the peremptory and

for-cause challenges occurred in chambers while petitioner was

in the courtroom. (Pet'r Mem. at 2-3, 5-6.) However,

petitioner was present during *voire dire* and also when the clerk

effectuated the challenges in open court. (Tr. at 23-68, 32,

75, 78-110, 112-38, 141-78, 184.) Confronted with a habeas

petition based on similar facts in *Cohen*, 290 F.3d 485, the

Second Circuit reviewed the case *de novo* and found that a

defendant "did not have a constitutional right to be present

during the juror challenges conducted in [the court's] . . .

chambers" where the defendant's rights were "sufficiently

preserved" by defendant's presence at other key portions of the

jury selection. *Id.* at 490. Here, just as in *Cohen*, Petitioner

was afforded ample opportunity to speak with counsel regarding

jury selection before counsel entered chambers and also before

the challenges were formally effectuated in open court in

petitioner's presence. *See id.* As such, just as in *Cohen*,

petitioner's underlying claim that the *in camera* jury challenges

violated his federal and constitutional rights is meritless.

*See id.*

Accordingly, as a matter of law, trial counsel's

performance was not ineffective when he failed to raise a

meritless objection to petitioner's absence from the robing room

during juror challenges. Further, it follows that as a matter

of law, appellate counsel was not constitutionally ineffective

in declining to raise this meritless issue on appeal. Thus, the

state court's rejection of petitioner's ineffective assistance

claim under *Strickland* cannot be unreasonable.

Moreover, even assuming that petitioner's underlying

claim was not patently frivolous, petitioner still cannot meet

the performance prong under *Strickland* because in the context of

an ineffective assistance of appellate counsel claim it is

insufficient to show, as petitioner does here, that appellate

counsel merely omitted a non-frivolous argument on appeal.  *See*

*Barnes*, 463 U.S. at 751-54.  In fact, appellate counsel is meant

to winnow out weaker claims.  *See id*. at 751.

Here, on direct appeal, petitioner's appellate counsel

raised a single issue: "whether appellant was denied his due

process right to a fair trial when the court, relying on the

court reporter's erroneous determination that it was not within

the scope of the jury's inquiry, denied defense counsel's

request that relevant cross-examination testimony be included in

a readback."[2]  (Br. Def.-Appellant at 2.)  In support of this

claim, appellate counsel submitted a twenty-six page brief in

which appellate counsel thoroughly reviewed the case against

petitioner by extensively citing both the trial and sentencing

transcripts. (*See id.* at 4-17.)  Appellate counsel then noted in

detail defense counsel's objection to an alleged insufficient

read-back of the trial transcript to the jury. (*See id.* at 17-

19.)  Appellate counsel further coherently argued that

petitioner had been deprived his due process rights due to the

insufficient read-back of the trial transcript, referencing both

the record and case law.  (*See id.* at 19-26.)

---

[2]    In a *pro se* supplemental brief, petitioner also raised the following
additional claims: (1) the trial court committed reversible error in allowing
the complainant to testify under the prompt outcry rule; (2) the trial court
abused its discretion and deprived defendant of his constitutional right to
confront the witness when it prohibited defense counsel form cross examining
complainant; and (3) appellant was denied his constitutional right to a fair
trial when the prosecutor made prejudicial remarks during the course of
arguments. (Resp't Ex. C, Pro-se Supplemental Brief for Defendant-Appellant
at 6, 11, 14, *People v. Aller*, 821 N.Y.S.2d 657 (2d Dep't 2006).)

On this record, appellate counsel's decision to omit the claim of ineffective assistance of trial counsel on appeal does not fall "outside the wide range of professionally competent assistance" and therefore, it cannot form the basis of an ineffective assistance of counsel claim. *See Mayo*, 13 F.3d at 533. Petitioner has thus failed to show that the Appellate Division was unreasonable in its application of *Strickland*'s performance prong. While the finding that petitioner did not meet his burden on *Strickland*'s performance prong is alone sufficient to require denial of this claim, below the court also considers, and rejects, petitioner's argument under the prejudice prong of *Strickland*. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court to . . . address both [the prejudice and performance] components of the inquiry if the defendant makes an insufficient showing on one.").

### B.    *Strickland's* Prejudice Prong

Even assuming, *arguendo*, that petitioner had met *Strickland*'s performance prong, petitioner would still fail to meet the *Strickland* prejudice prong because petitioner cannot show that there is a "reasonable probability" that, but for appellate counsel's failure to raise the ineffective assistance of counsel issue on direct appeal, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Here, petitioner must show that the result of his

direct appeal would have been different had appellate counsel
raised the issue of petitioner's absence during the *in camera*
juror challenges.  However, as previously discussed, this claim
is without legal merit and therefore, petitioner cannot show
that there is a "reasonable probability" that his claim may have
been successful before the New York courts.  *See Mayo*, 13 F.3d
at 534.  Consequently, petitioner cannot meet his burden as to
*Strickland*'s prejudice prong, and the Appellate Division's
finding under *Strickland* was reasonable.

Accordingly, the Appellate Division's rejection of
petitioner's ineffective assistance of counsel claim on the
merits was neither contrary to, nor an unreasonable application
of, clearly established federal law.

### CONCLUSION

For the foregoing reasons, the application for writ of
habeas corpus is denied in its entirety.  Because petitioner has
not made a substantial showing of the denial of any
constitutional right, the court will not issue a certificate of
appealability.  28 U.S.C. § 2253; *Lozada v. United States*, 107
F.3d 1011, 1017 (2d Cir. 1997) (abrogated on other grounds);
*Richardson v. Greene*, 497 F.3d 212, 217 (2d. Cir. 2007)
(discussing the standard for issuing a certificate of
appealability).  Further, the court certifies, pursuant to 28
U.S.C. § 1915(a), that any appeal from this judgment denying the

petition would not be taken in good faith.  *See Coppedge v.*
*United States*, 369 U.S. 438 (1962).  The Clerk of the Court is
respectfully requested to dismiss the petition, enter judgment
in favor of respondent, and close this case.  Respondent shall
serve a copy of this Memorandum and Order upon petitioner and
file a declaration of service by May 13, 2011.

**SO ORDERED.**

Dated:     Brooklyn, New York
           May 12, 2011

                              _____/s/_____
                              **KIYO A. MATSUMOTO**
                              United States District Judge